UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 10-40007-02-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING MOTION |
| | ) | FOR NEW TRIAL |
| JAMES MICHAEL WILBOURN, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, James Michael Wilbourn, through counsel, moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The United States resists Wilbourn's motion, arguing that it is untimely and that even if it were timely, it would not be in the interest of justice to grant a new trial because sufficient evidence supports the jury's guilty verdict. Wilbourn also filed a pro se motion to dismiss the indictment.

On July 29, 2011, this court held a hearing on Wilbourn's motion for a new trial and asked the parties to discuss the following issues: (1) whether drug quantity is an element of conspiracy so that insufficient evidence of drug quantity would support granting a new trial; and (2) the appropriate remedy if the evidence in this case is not sufficient to support the drug quantity found by the jury.

After hearing the parties' arguments, the court concludes that the government did not present sufficient evidence to sustain the jury finding that

50 grams or more of crack cocaine would have been foreseeable to Wilbourn as a member of the conspiracy. Because drug quantity is not an element of the offense, however, Wilbourn's motion for a new trial is denied. The court will determine the drug quantity at Wilbourn's sentencing.

## FACTUAL BACKGROUND

A jury convicted Wilbourn of conspiracy to distribute 50 grams or more of cocaine base (crack cocaine for the time period of late 2008 to August 2009) in violation of 21 U.S.C. §§ 841(a)(1) and 846. During his trial, the government presented the testimony of Detective Thomas Schmitz, Laurie Stephanson, Brad Johnson, Andre Gilbert, Thomas Reynolds, William Watkins, Colleen Cross, and Tony Day. Beth Gurnsey also testified, but the district court struck her testimony because it was beyond the scope of the alleged conspiracy.

Detective Thomas Schmitz testified that he set up a controlled buy with confidential informant Laurie Stephanson. At Detective Schmitz's direction, Stephanson went to a home known for drug activity and purchased $100 worth of crack cocaine from Wilbourn. Detective Schmitz testified that a $100 rock of crack cocaine usually weighs between half a gram and a gram.

Laurie Stephanson testified that she first began doing controlled buys from Andre Gilbert in February of 2009. Prior to July 20, 2009, she had completed 32 controlled buys for the Sioux Falls Police Department. On July 20, 2009, she went to make a controlled buy, intending to purchase crack cocaine

from Tony Day, but Day did not have any crack cocaine. Stephanson then went to Roy Walton's home, another location known for drug activity, to purchase drugs. There she encountered Andre Gilbert and Wilbourn and purchased $100 worth of crack cocaine. Stephanson also testified that she was surprised that Gilbert and Wilbourn were be working together. Brad Johnson, a forensic specialist for the Sioux Falls police department, testified that the crack cocaine obtained during the controlled buy yielded .87 grams of cocaine when it was tested.

Andre Gilbert, who was charged as a co-conspirator, also testified. He testified that when he cooked crack cocaine, he generally did it in batches of around 63 grams. There was no testimony, however, that Wilbourn knew Gilbert cooked the crack cocaine or participated in the cooking process.

According to Gilbert, occasionally Wilbourn and Reggie Walton, another crack user, would pool money to share a bag of crack. Sometimes, Gilbert would pay Wilbourn with crack for rides. Toward the end of 2008, Gilbert was selling between $12,000 and $20,000 worth of crack cocaine per month. By around December 2009, Gilbert was going through about 125 grams of crack cocaine on a monthly basis. But Wilbourn was incarcerated for part of 2009. Thus, from the end of 2008 until around July 4, 2009, Gilbert did not sell Wilbourn any crack cocaine. In July 2009, Wilbourn again approached Gilbert, but Gilbert refused to sell him any crack cocaine initially because he did not trust him.

Eventually, he resumed selling small quantities of crack cocaine to Wilbourn. Gilbert would sometimes front Wilbourn crack cocaine. On one or two occasions, Wilbourn owed Gilbert between $100 and $200 for drugs so Gilbert took Wilbourn's car keys. Finally, Gilbert testified that from the end of 2008 through August 2009, Gilbert sold approximately 63 grams of crack every two weeks.

William Watkins also testified during Wilbourn's trial. Watkins stated that he would often share crack cocaine with Wilbourn and his wife. Watkins saw Wilbourn buying crack cocaine at his home, but stated, "I am not going to say he is selling" and that Wilbourn "was not a dealer or anything." He did see Wilbourn middle a deal once and was present when Gilbert "fronted" Wilbourn 1 gram of crack cocaine on one occasion. Watkins also testified that Wilbourn would often "take over" to get drugs and that Wilbourn would steal crack cocaine if he could not buy it. Notably, the day of the controlled buy was the only time he saw Wilbourn get crack cocaine from Gilbert and sell it to someone else, rather than use it himself.

Colleen Cross testified that Wilbourn would sometimes answer the door at a home where drugs were sold and used. When Wilbourn answered the door, he would likely be paid in drugs. Another responsibility of the door person was to watch for the police. Cross knew of a few occasions when Wilbourn would pick

up drugs for other people. She also testified that Wilbourn did not have any customers, but would deliver crack to Evelyn Washington.

Tony Day also testified against Wilbourn. He testified that Wilbourn and Gilbert did favors for each other involving drugs. Day stated that he only witnessed one or two incidents. Once Day saw Wilbourn get a package, go outside, and return with money. Wilbourn would sometimes give Day crack cocaine in exchange for a place to get high. Day stated that the only drug activity Wilbourn was involved in during 2009 was purchasing it.

At the close of the prosecution's case, Wilbourn's attorney moved for a Rule 29 judgment of acquittal based on the lack of evidence as to quantity. The trial judge denied his motion and the jury returned a guilty verdict.

After the guilty verdict, Wilbourn moved for a new trial on the basis that the government did not turn over exculpatory material prior to trial, violating *Brady v. Maryland*, 373 U.S. 83, 88 (1963). Wilbourn also filed a pro se motion for a new trial. This court denied those motions on January 12, 2011.

During Wilbourn's sentencing hearing on January 13, 2011, Wilbourn objected to the drug quantity calculation contained in the presentence report (PSR). The government did not present any additional evidence to support the drug quantity. Thus, the court sustained Wilbourn's objections, leaving the total drug quantity in the PSR at 5.2 grams. At this time, Wilbourn renewed his

motion for a new trial and the court directed the parties to brief the drug quantity issue.

## DISCUSSION

Rule 33 of the Federal Rules of Criminal Procedure provides that a court may vacate any judgment and grant a new trial "if the interest of justice so requires." A motion for a new trial "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33. "Additional grounds raised in amendments, supplements, or renewals of a timely motion for a new trial are procedurally barred if not asserted within the 14-day time limit" unless the defendant files for an extension before the original 14-day period has expired or unless the court finds excusable neglect. *United States v. Villalpando*, 259 F.3d 934, 937 (8th Cir. 2001) (internal citations omitted). Rule 45(b)(1)(B) of the Federal Rules of Criminal Procedure permits the court to extend the time to move for a new trial if the court finds Wilbourn failed to timely file his motion because of excusable neglect.

### I.     **Wilbourn has established excusable neglect**.

Four factors are to be considered when determining whether a late filing is due to excusable neglect. *United States v. Boesen*, 599 F.3d 874, 879 (8th Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). They are: (1) the danger of prejudice to the opposing party, (2)

the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.*

The government contends that it will be prejudiced if Wilbourn's motion is granted because it will file an appeal, delaying the start of the new trial. During that time, witnesses' memories may fade. The government also argues that there was no reason for Wilbourn to delay until January 13, 2011, in filing his motion for a new trial. The government contends that the drug quantity and scope of the conspiracy issues were present at the time he filed his initial motion. But the issues in this case are complicated. Wilbourn renewed his motion for a new trial in response to the court's concern that drug quantity issues had not been adequately briefed after objections to the PSR left the relevant drug quantity at 5.2 grams of crack cocaine. Moreover, there is no contention that Wilbourn has not acted in good faith. Accordingly, Wilbourn has established excusable neglect and the court may consider the merits of his motion for a new trial.

**II.     There is insufficient evidence to support a quantity of 50 grams or more of crack cocaine.**

Even considering the evidence in the light most favorable to the government, *see United States v. Tenerelli*, 614 F.3d 765, 774 (8th Cir. 2010), there is insufficient evidence to demonstrate that the drug quantity of 50 grams or more of crack cocaine would have been foreseeable to Wilbourn. As a defendant in a conspiracy, Wilbourn could be convicted of a conspiracy based

on "all reasonably foreseeable drug quantities that were in the scope of the criminal activity that he jointly undertook." *United States v. Littrell*, 439 F.3d 875, 881 (8th Cir. 2006). *See also United States v. Spotted Elk*, 548 F.3d 641, 674 (8th Cir. 2008) ("[A] defendant's conviction for conspiracy does not automatically mean that every conspirator has foreseen the total quantity of drugs involved in the entire conspiracy . . . the district court must find the scope of the individual defendant's commitment to the conspiracy and the foreseeability of particular drug sale amounts from the individual defendant's vantage point.") During Wilbourn's trial, the government presented evidence that Wilbourn had sold less than 1 gram of crack cocaine to a confidential informant on July 20, 2009. The government also presented evidence that Wilbourn occasionally manned the door at drug houses and that on one occasion, a witness saw him take a package outside and return inside with cash. Another witness testified Wilbourn occasionally delivered crack cocaine. But Stephanson, a frequently used confidential informant for the Sioux Falls Police Department, was surprised that Wilbourn and Gilbert would do a drug deal together. This evidence shows that Wilbourn was a buyer and user of crack cocaine and involved in drug activity. "If a defendant agrees to aid a large-volume drug dealer in completing a single, small sale of drugs, the defendant will not be liable for prior or subsequent acts of the dealer that were not reasonably foreseeable."

*United States v. Foxx*, 544 F.3d 943, 953 (8th Cir. 2008) (quoting *United States v. Jones*, 965 F.2d 1507, 1517 (8th Cir. 1992)).

Here, the government did not present any evidence showing that it would be foreseeable to Wilbourn that Andre Gilbert was dealing 50 grams or more of crack cocaine. There is no evidence to show that Wilbourn was involved in supplying powder cocaine to Gilbert. Nor was Wilbourn ever present when Gilbert "cooked" crack cocaine into "rocks." Wilbourn did not buy large quantities of drugs; in fact, one witness testified that he generally bought crack in $100 to $200 increments. Nor did the government present any testimony that Wilbourn witnessed or participated in any large sales of crack cocaine. Moreover, the evidence implicating Wilbourn as anything other than a crack cocaine user is confined to the time around the July 20 controlled buy. The indictment charged that the conspiracy was ongoing between late 2008 and August of 2009. But Wilbourn was incarcerated from the end of 2008 to July 4, 2009. Finally, Wilbourn's counsel objected to the drug quantity during Wilbourn's sentencing. The government had the opportunity to present more evidence to show that the charged quantity of 50 grams or more of crack cocaine would have been foreseeable to Wilbourn, but the government did not present any additional evidence. Thus, there is not sufficient evidence to support the jury's determination that the quantity of drugs involved in the conspiracy that was foreseeable to Wilbourn was 50 grams or more of crack cocaine.

Drug quantity, however, is not an element of the offense under 21 U.S.C. § 841(a)(1). "It is the statute, not the indictment, that sets the elements of the offense that must be proven beyond a reasonable doubt." *United States v. Serrano-Lopez*, 366 F.3d 628, 638 (8th Cir. 2004). "We have previously held that the statute sets forth the elements of the offense that must be proved beyond a reasonable doubt and that 'drug quantity is not an element unless the quantity can and does lead to the imposition of a sentence greater than the otherwise applicable statutory maximum.' " *United States v. Webb*, 545 F.3d 673, 678 (8th Cir. 2008) (quoting *Serrano-Lopez*, 366 F.3d at 638). Here, Wilbourn faced[1] a mandatory minimum sentence of twenty years, which was no greater than the applicable statutory maximum for an indeterminate amount of crack cocaine. Thus, drug quantity is not an element in his case. Because drug quantity is not an element of the crime, Wilbourn concedes that he is not entitled to a new trial on that ground.

### III. The court will determine the drug quantity at sentencing.

Because there is not sufficient evidence to support the jury's finding as to drug quantity, the court will set aside that finding and determine the drug

---

[1] While Wilbourn's case was pending, the Department of Justice indicated it would apply the Fair Sentencing Act of 2010 retroactively to any defendant sentenced after the Act's passage. If the Fair Sentencing Act is retroactively applied to Wilbourn, the mandatory minimum sentence for 50 grams of crack cocaine with the 21 U.S.C. § 851 enhancement drops to ten years, rather than the twenty-year mandatory minimum Wilbourn previously faced.

quantity at sentencing. Precedent from the Eighth Circuit Court of Appeals establishes that this is the appropriate remedy, rather than to grant a new trial on all issues.

In *United States v. Rolon-Ramos*, 502 F.3d 750 (8th Cir. 2007),the Eighth Circuit Court of Appeals confronted a similar issue regarding the foreseeability of the drug quantity involved in a conspiracy to distribute methamphetamine. In that case, the government presented evidence that a methamphetamine distribution conspiracy existed between two other people, Julio Garcia-Hernandez and Jose Deluna-Ponce; that the defendant was inside a motel room when the two conspirators pointed a gun at a confidential informant and demanded payment for drug debts; that the defendant helped lock the door and block the exit while the conspirators demanded payment; that the defendant left the motel room and walked as if he were carrying something at his waist; and that the defendant was in possession of a small quantity of methamphetamine upon his arrest. *Id.* at 754. While this evidence was sufficient to establish a conspiracy conviction, it was not sufficient to establish that a drug quantity of 500 grams or more of methamphetamine would have been foreseeable to the defendant. *Id.* Because "the evidence [was] wholly insufficient to connect Rolon-Ramos to a conspiracy to distribute 500 grams or more of methamphetamine," the Eighth Circuit Court of Appeals reversed and remanded for resentencing on the drug quantity issue. *Id.*

In *Theus v. United States*, 611 F.3d 441 (8th Cir. 2010), the defendant was convicted of conspiracy to distribute 5 kilograms or more of a mixture or substance containing cocaine. During his trial, there was a variance between the indictment and the proof. The government failed to prove Theus was involved with the charged conspiracy, but the court found that the government did prove beyond a reasonable doubt that Theus "had possession of prohibited drugs with the intent to distribute those drugs and that he did in fact distribute such drugs." *Id.* at 444. The presentence investigation report attributed 1.02 kilograms of cocaine to Theus, while 5 kilograms of cocaine was attributed to the charged conspiracy. *Id.* Despite the PSR stating that "there is not enough evidence to support that the defendant was involved with 5 kilograms of cocaine," Theus was sentenced to the ten-year mandatory minimum sentence for distributing or possessing with intent to distribute 5 kilograms or more of cocaine. *Id.* at 445. Theus did not appeal on this ground. When the Eighth Circuit Court of Appeals considered his motion for post-conviction relief under 28 U.S.C. § 2255, it found that Theus suffered prejudice from his counsel's failure to raise the sentencing error in the district court or on direct appeal when Theus was sentenced to a ten-year mandatory minimum for an amount of cocaine that required only a five-year mandatory minimum. *Id.* at 449. Thus, the court reversed and remanded for sentencing based on the amount of cocaine the

district court found to have been proved, rather than the amount the jury found. *Id.*

### IV. Wilbourn's pro se motion to dismiss the indictment is untimely.

Wilbourn has filed a pro se motion to dismiss the indictment. Because Wilbourn is represented by counsel, it is within the court's discretion to refuse to consider his pro se filing. *See United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994). The court will, however, consider Wilbourn's pro se motion.

Rule 12 of the Federal Rules of Criminal Procedure specifies that certain motions must be made before trial. A motion to dismiss the indictment is one such motion. Fed. R. Crim. P. 12(b)(3) ("The following *must* be raised *before trial* . . . a motion alleging a defect in the indictment or information–but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or state an offense[.]") (emphasis added). Wilbourn does not base his pro se motion on an alleged defect in jurisdiction or failure to state an offense; rather he challenges the sufficiency of the evidence presented during trial. Thus, his motion is untimely and is denied as such.

### CONCLUSION

After reviewing the evidence in the light most favorable to the government, the court finds that there is insufficient evidence to support the jury's finding that 50 grams or more of crack cocaine would have been foreseeable to Wilbourn

13

as a member of the conspiracy. Because drug quantity is not an element of the offense, the court will set aside the jury finding rather than grant a new trial on all issues. Accordingly, the drug quantity will be determined by this court at Wilbourn's sentencing. Therefore, it is

ORDERED that Wilbourn's amended motion for a new trial (Docket 154, 160) is denied.

IT IS FURTHER ORDERED that the probation officer will prepare and disclose a revised PSR incorporating the court's earlier rulings on the objections to the PSR and recalculating the advisory guideline to comply with the provisions of the Fair Sentencing Act. The revised PSR will be disclosed to plaintiff and defendant by **August 24, 2011**. Any objections to the presentence report by either the government or the defendant will be submitted to the Probation Office and opposing counsel by **August 31, 2011**. The sentencing hearing will be held on **Monday, September 12, 2011, at 2:30 p.m.**

IT IS FURTHER ORDERED that Wilbourn's pro se motion to dismiss the indictment (Docket 187) is denied.

Dated August 5, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE